UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| GLENDA STIDHAM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHELLE KING, *Acting Commissioner of* ) <br> *Social Security*, ) <br> ) <br> Defendant. ) <br> ) | No. 6:24-CV-87-HAI <br><br> MEMORANDUM OPINION <br> & ORDER |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On March 3, 2021, Plaintiff Glenda Stidham filed a protective Title II application for disability insurance benefits. *See* D.E. 11 at 34.[1] She dates the beginning of her disability period to October 21, 2020. *Id*. The Social Security Administration denied Stidham's claims initially and upon reconsideration. *Id*. On January 18, 2023, Administrative Law Judge ("ALJ") Joyce Francis conducted an administrative hearing by video and telephone. *Id*. The ALJ heard testimony from Stidham and impartial vocational expert ("VE") Julie McKeown. Stidham was represented by non-attorney Carl Triebold. *Id*.

The ALJ found that Stidham has a number of severe impairments, but that none qualified as a listed impairment. D.E. 11 at 37-39. The ALJ found she had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b), with several limitations. *Id*. at 18. Drawing on the VE's testimony, the ALJ found that Stidham could perform her past relevant work as a preschool teacher or teacher's aide and Stidham was found "not disabled." *Id*. at 47.

---

[1] For the administrative record, the Court will refer to the black page numbers printed on the bottom of each page. Otherwise, page number references are to the blue numbers generated by ECF.

Stidham now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying her application for disability insurance benefits and social security income. D.E. 1. The parties consented to the referral of this matter to a magistrate judge. D.E. 8. This matter was thus referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 9.

Stidham's first argument concerns medical events and medical records that post-date the medical opinions in this case. After the most recent medical opinions concerning Stidham's abilities were rendered in February 2022, she was hospitalized twice for cardiac episodes. Stidham argues the ALJ impermissibly interpreted the raw medical records from this period, when the ALJ should have called for an additional medical opinion to assist in crafting the RFC.

Stidham's second argument is that, while the ALJ found mild mental limitations across all paragraph B domains, the ALJ did not incorporate those limitations into the RFC or explain why no such limitations appeared in the RFC. D.E. 12, 15.

The Commissioner argues in favor of the ALJ's decision. D.E. 14.

### I. The ALJ's Findings

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case. *See* D.E. 11 at 23-47.

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . ., the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile.

*Id.* at 474 (internal citations omitted).

At the first step, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Stidham was "not engaged in substantial gainful activity" since the disability onset date. D.E. 11 at 36. The ALJ thus proceeded to the next step.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit the physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Stidham suffers the following severe impairments: "diabetes, neuropathy, coronary artery disease status post stent placements, obesity, and vision loss (20 CFR 404.1520(c); SSR 19-2p)." D.E. 11 at 37.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is disabled. 20 C.F.R. § 404.1520(d). The ALJ found that none of Stidham's impairments met or equaled a listing. D.E. 11 at 39. Stidham does not challenge this finding. The ALJ considered several listings related to eye disease, along with listings for ischemic heart disease, diabetes mellitus and other pancreatic gland disorders, peripheral neuropathy, and obesity. *Id*. at 39-40.

If, as here, a claimant is found to be not disabled at step three, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. 20 C.F.R. § 404.1520(e). The ALJ determined that Stidham has the RFC

> to perform light work as defined in 20 CFR 404.1567(b), except she can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; can frequently be exposed to extreme heat and extreme cold; can have frequent concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the DOT; and can read type the size of 14 point or greater.

D.E. 11 at 40.

Stidham's arguments are targeted at this RFC.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). Here, the VE testified, and the ALJ found, that Stidham could perform her past relevant work as a preschool teacher and teacher aide. D.E. 11 at 46-47. The VE further testified that Stidham could work other jobs, such as office helper, stock checker, and garment sorter. *Id*. at 75. Because Stidham could perform past relevant work, she was found not disabled at Step Four.

Accordingly, on April 14, 2023, the ALJ issued a decision finding that Stidham was not disabled and was therefore ineligible for disability benefits. D.E. 11 at 47. The Appeals Council declined to review the ALJ's decision on February 5, 2024. *Id*. at 15. Stidham filed this action in federal court on June 19, 2024. D.E. 1.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id.* § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must

evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III. ANALYSIS

Stidham's first argument is that "there is no expert medical opinion in the record that considered any of the medical records submitted after February 2, 2022 which represented the significant worsening of the Plaintiff's heart condition." D.E. 12 at 5. The ALJ then "failed to obtain any new opinion, and, rather, found incomplete and stale opinions persuasive, and then used her own lay opinion to interpret new medical evidence." *Id*. at 7.

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

Stidham argues the ALJ's behavior runs afoul of the *Deskin* rule (D.E. 12 at 8-11), which this Court has followed, *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013 (E.D. Ky. Feb. 6, 2019).

The ALJ found Stidham suffered the severe impairment of "coronary artery disease status post stent placements." D.E. 11 at 37. Stidham provides the following summary of this concern:

> The record in this case clearly demonstrates that the Plaintiff has an extensive history of cardiac health issues, specifically coronary artery disease. (Tr. 563). The Plaintiff has a history of abnormal cardiac diagnostic testing, which reveals abnormal cardiac functioning and abnormal cardiac imaging. These abnormal images confirm stenosis in multiple cardiac vessels to a degree of up to 50 percent. (Tr. 559; 563; 568). Furthermore, the Plaintiff received stents in 2016, 2018, and 2019. (Tr. 568). She also has a history of prior myocardial infarctions, all involving the right coronary artery. (Tr. 568).

D.E. 12 at 6.

As Stidham explains (D.E. 12 at 6-7), state agency physical consultants provided opinions on June 30, 2021, and February 12, 2022 (exhibits 2A and 4A in the record). And a consultive examiner ("Nurse Onaeka") provided an opinion on February 2, 2022 (exbibit 20F). Stidham's primary care physician Dr. Naval Srinivas provided an opinion back in November 2020 (exhibit 7F).

Several medically significant events occurred after these opinions were rendered:

> On February 15, 2022 and June 3, 2022, diagnostic testing showed 60% narrowing in the Plaintiff's left coronary artery and 40%-50% percent narrowing in the Plaintiff's right coronary artery. (Tr. 1223-1224; 1339; 1371). On May 5, 2022, the Plaintiff suffered a cardiac arrest and was admitted to the hospital for six days, at which time she was placed on a mechanical ventilator. (Tr. 1097). The Plaintiff was discharged from the hospital with an event monitor because the cause of her cardiac arrest was unclear, home oxygen, an ambulation assistance device, and orders for physical therapy, occupational therapy, and speech therapy. (Tr. 43; 1098; 1267). On May 27, 2022, the Plaintiff had an abnormal stress test. (Tr. 1334; 1339). On June 2, 2022, the Plaintiff returned to the emergency department complaining of chest pain. (Tr. 1336). Upon being admitted to the hospital, the Plaintiff received another stent. (Id). After this second

> hospitalization, the Plaintiff required cardiopulmonary rehabilitation. She underwent this rehabilitation for approximately three months. (Tr. 43).

D.E. 12 at 6.

The facts of this case fit within the "*Deskin* rule" in its proper and most narrowly formulated form. In *Deskin*, none of the claimant's treating physicians had provided a medical opinion addressing her limitations. *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 910 (N.D. Ohio 2008). The only medical opinion in the record came from a state agency reviewing physician; it was issued in October 2003. *Id*. However, the record contained two years' worth of medical records that post-dated the state agency reviewing physician's opinion. *Id*. "Rather than ordering a consultative examination or having a medical expert testify at the hearing, the ALJ proceeded to decide the case based on his analysis of the medical records," without even discussing the reviewing physician's specific limitations. *Id*.

The *Deskin* Court defined the issue as whether an ALJ should decide a case "in the absence of a medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity." *Deskin*, 605 F. Supp. 2d at 910-11. To make an RFC finding, the *Deskin* court held, it is "[c]ritical" that the ALJ obtain and consider "residual capacity opinions offered by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the claimant's medical records." *Id*. at 911-12. "In making the residual functional capacity finding," the *Deskin* court held, "the ALJ may not interpret raw medical data in functional terms." *Id*. at 912.

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as

8

those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself."

*Id.* (quoting *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)).

The *Deskin* court added this caveat: "To be sure 'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" *Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). An RFC opinion from a medical source "may not be necessary in every case." *Id.* However, when a claimant has sufficiently placed her RFC at issue, an expert's RFC evaluation "is ordinarily essential." *Id.* (quoting *Manso-Pizarro*, 76 F.3d at 17).

Accordingly, the *Deskin* court posited this "general rule:"

> where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Deskin*, 605 F. Supp. 2d at 912 (quotation marks omitted).

The author of *Deskin* again faced a similar scenario in *Kizys*. *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). As the *Kizys* court stated the issue: "This is a case in which the ALJ found that Kizys had multiple severe impairments and imposed an extremely restrictive residual functional capacity finding without the benefit of any medical source opinion as to work-related limitations whatsoever." *Id.* at *1. The *Deskin* rule is "narrow" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not

9

include consideration of a critical body of objective medical evidence." *Id*. Nevertheless, an ALJ "retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity." *Id*. (quotation marks omitted).

As another court has explained, "*Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (applying *Deskin*, but affirming the ALJ).

Numerous decisions in this Circuit have followed the *Deskin-Kizys* rule when the facts fit.[4] The "*Deskin* Rule" has been criticized by courts within this Circuit, but generally not in cases that fit the rule in its most narrow formulations described above.

---

[4] *See, e.g.*, *Ashley B. v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-690, 2025 WL 341824 (S.D. Ohio Jan. 30, 2025) (remanding when there were significant medical developments post-dating the medical opinions in the record); *Aarron D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00588-CHL, 2024 WL 1288230 (W.D. Ky. Mar. 26, 2024) (remanding under *Deskin* when there was "no medical source opinion whatsoever"); *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-CV-13069, 2021 WL 5871527 (E.D. Mich. Nov. 17, 2021) (recommending remand when "nearly two years of medical records were not considered in" the medical opinions available to the ALJ), *report and recommendation adopted*, 2021 WL 5867347 (E.D. Mich. Dec. 10, 2021); *Shelley v. Comm'r of Soc. Sec.*, No. 2:18-CV-676, 2019 WL 4023551 (S.D. Ohio Aug. 26, 2019) (remanding when the petitioner had undergone "multiple procedures" following the rendering of the most recent medical source opinion); *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435 (S.D. Ohio July 29, 2019) (remanding when there was a critical CT scan not covered in any of the medical opinions); *VanWormer v. Comm'r of Soc. Sec.*, No. 4:16-CV-12978, 2017 WL 4230654, at *3 (E.D. Mich. Sept. 25, 2017); *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (finding "a multitude of consistent, reported and unreported cases holding that it is in error for the ALJ to formulate an RFC without the benefit of *any opinion evidence*"); *Woelk v. Comm'r of Soc. Sec.*, No. 2:13-CV-12411, 2014 WL 2931404, at *7 (E.D. Mich. May 15, 2014) (finding an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence), *report and recommendation adopted*, 2014 WL 2931411 (E.D. Mich. June 30, 2014); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:12-CV-12585, 2013 WL 6095545, at *8 (E.D. Mich. Nov. 20, 2013) (remanding when the impairment was not minimal and there was no relevant medical opinion on RFC); *Davies v. Comm'r of Soc. Sec.*, No. 1:10-CV-2012, 2012 WL 1068736, at *4 (N.D. Ohio Feb. 14, 2012) (remanding when the operative medical opinion did not take into account "additional objective medical tests performed later, which revealed that [the claimant's] condition had worsened"), *report and recommendation adopted sub nom. Davies v. Astrue*, 2012 WL 1068732 (N.D. Ohio Mar. 29, 2012).

For cases in Kentucky, *see Charles W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-312-DJH-CHL, 2023 WL 5011745, (W.D. Ky. July 5, 2023) (finding *Deskin* inapplicable), *report and recommendation adopted sub nom.*

10

To be clear, this Court agrees that crafting the RFC is within the ALJ's domain and the ALJ's RFC is not required to correspond to an identical medical opinion. The Commissioner is correct that the claimant bears the burden of proving "the existence and severity of limitations caused by" her physical and mental impairments. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, both the regulations and case law recognize the ALJ has a duty to develop the record. 20 C.F.R. §§ 404.1512(b), 416.912(b) (2016); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2020); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). If, after reviewing the evidence on the record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2) (2020). An ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, but she may take additional steps to do so, including ordering a consultative examination. 20 C.F.R. §§ 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). While the ALJ has discretion in resolving discrepancies, substantial evidence in the record must support the residual functional capacity finding. *See, e.g., Deskin*, 605 F. Supp. 2d at 911 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

---

*Washburn v. Comm'r of Soc. Sec.*, 2023 WL 5003585 (W.D. Ky. Aug. 4, 2023); *Jeffrey Scott H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-14-CHL, 2022 WL 4002318, at *14 (W.D. Ky. Sept. 1, 2022) (finding later-admitted records were not "a critical body of the objective medical evidence"); *Sefo v. Comm'r of Soc. Sec.*, No. 3:20-CV-534-CHL, 2022 WL 969622 (W.D. Ky. Mar. 30, 2022); *Hancock v. Comm'r of Soc. Sec.*, No. 3:20-CV-376-CHL, 2022 WL 801278, at *5 (W.D. Ky. Mar. 15, 2022) (remanding when the record "did not contain an updated opinion from a medical professional regarding [the claimant's] functional capacity that post-dated his significant cardiac procedures and care"); *Nalley v. Kijakazi*, No. 3:20-CV-472-RSE, 2021 WL 5530954, at *3-4 (W.D. Ky. Nov. 24, 2021) (describing the *Deskin* rule but finding it did not apply); *Brown v. Saul*, No. 1:19-CV-165-HBB, 2020 WL 5077257 (W.D. Ky. Aug. 27, 2020); *Tomes v. Saul*, No. 1:19-CV-139-LLK, 2020 WL 2776501 (W.D. Ky. May 28, 2020); *Chapman v. Saul*, No. 1:19-CV-48-LLK, 2019 WL 6883810 (W.D. Ky. Dec. 17, 2019); *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013 (E.D. Ky. Feb. 6, 2019) (remanding when the ALJ "made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence"); *Childress v. Berryhill*, No. 1:16-CV-119-HBB, 2017 WL 758941 (W.D. Ky. Feb. 27, 2017); *McGranahan v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098 (E.D. Ky. Oct. 1, 2015) (remanding when degenerative changes had been detected following the last medical opinion).

11

> While the Sixth Circuit has not commented on *Deskin*, significant case law in this circuit supports the principle that when the evidence of physical impairment is more than minimal, an independent determination of functional limitations by the ALJ is not supported by substantial evidence and a medical opinion is required. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (collecting cases). However, the "*Deskin* rule" narrowly applies in only two situations: "(1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Branscum*, 2019 WL 475013, at *11 (quoting *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013))[.]

*Sefo v. Comm'r of Soc. Sec.*, No. 3:20-CV-534-CHL, 2022 WL 969622, at *4 (W.D. Ky. Mar. 30, 2022).

The question here is whether the ALJ "made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence." *Raber*, 2013 WL 1284312, at *15. The situation before this Court is that, after the last relevant medical opinion was issued in February 2022, Stidham was hospitalized for six days in May 2022 after suffering a heart attack. She was found to be without a pulse during emergency room triage. D.E. 11 at 1266. She was resuscitated and placed on a ventilator. *Id.* at 1265. She returned to the emergency room on June 2, 2022. This time, she received another stent and needed CPR again. *Id.* at 1336.

The ALJ noted these events in her opinion. D.E. 11 at 42-43. Looking at the medical records alone, the ALJ opined that Stidham's symptoms had improved since the stint placement and there had been no "extended intensive treatment" since the events. *Id.* at 43.

The cardiac events of May to June 2022 were significant and potentially capable of causing long-term adverse effects. The Court does not know how these events and their resulting treatments, therapy, and medications, could have affected a medical source's opinion regarding Stidham's abilities. The ALJ thus made an RFC determination based on outdated source

12

opinions that did not include consideration of a critical body of objective medical evidence. *See Jeffrey Scott H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-14-CHL, 2022 WL 4002318, at *14 (W.D. Ky. Sept. 1, 2022); *Sefo*, 2022 WL 969622, at *4; *Raber*, 2013 WL 1284312, at *15; *Kizys*, 2011 WL 5024866, at *1. This is to say that the RFC was not based on substantial evidence.

> To provide but one comparison, this case bears similarities to *Hancock*, where:
>
> over the course of a 15-month period post-dating the last opinion evidence of record, Hancock had a myocardial infarction, three cardiac catheterizations, and two stent placements and continued to suffer from intermittent chest pain up to the date of the administrative hearing requiring medication with significant side effects. Despite these serious and ongoing cardiac impairments, there is no medical opinion on the record addressing the functional implications of [these more recent events].

*Hancock*, 2022 WL 801278, at *5. The *Hancock* court therefore remanded under the second prong of the *Deskin-Kizys* rule.

In contrast, this case differs from *Jeffrey Scott H.*, 2022 WL 4002318. There, the "later-admitted records" were mostly treatment-progress notes and did not constitute "a critical body of the objective medical evidence." *Id*. at *14. These records were merely "cumulative" of the existing record.

Things are quite different here. Like the *Hancock* claimant, Stidham had heart attacks and heart surgery (with subsequent therapy, treatment, and medication) that post-dated the available medical opinions. The records of these events were more than mere progress records. And they were not cumulative of the existing record. The Court is hard-pressed to see how the post-February 2022 cardiac events do not amount to "a critical body of objective medical evidence" that was not considered in any of the existing medical-source opinions.

Stidham's testimony suggested that things had worsened for her. Specifically, she said that, since the May 2022 heart attack, she has used ambulatory assistance. At first, she used a

13

walker around the house. She later grew able to walk around the house, and she uses a rolling chair for housework. But she testifies she uses a wheelchair every time she goes out, such as to go shopping. Stidham said that, at the time of the hearing, she was only comfortable walking for ten minutes or standing still for three or four minutes. D.E. 11 at 67-70. The ALJ did not find this testimony wholly credible. But things could have turned out differently if there had been a medical opinion that took into account the effects of Stidham's post-February-2022 cardiac events. All this is to say that an error here was not clearly harmless.

To summarize, this case fits squarely within the second of the two narrow *Deskin-Kizys* scenarios. The ALJ made an RFC determination based on outdated source opinions that did not include consideration of a critical body of objective medical evidence. *Raber*, 2013 WL 1284312, at *15. This is not a case where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity. *Deskin*, 605 F. Supp. 2d at 912. This case therefore warrants remand for reasons similar to *Ashley B.*, 2025 WL 341824; *Hancock*, 2022 WL 801278; *McCauley*, 2021 WL 5871527; *Shelley*, 2019 WL 4023551; *Snell*, 2019 WL 3406435; *Branscum*, 2019 WL 475013; *McGranahan*, 2015 WL 5828098; *Davies*, 2012 WL 1068736; and others.

Because the Court remands upon Stidham's first ground for relief, it is not necessary to delve into the issue of whether the RFC appropriately accounted for her mental limitations. The parties are encouraged to pursue this issue further in subsequent proceedings.

### IV. Conclusion

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)     Plaintiff's request to remand (D.E. 12) is **GRANTED**.

14

(2)  The Court **REMANDS** this matter to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for further consideration.

(3)  **JUDGMENT** will be entered in favor of Plaintiff by separate contemporaneous order.

This the 7th day of February, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge